(No. 6769.   October 15, 1941)

CLARA H. STOVER, Widow, Appellant, v. WASHINGTON COUNTY, Employer, and STATE INSURANCE FUND, Surety, Respondents.

(118 Pac. (2d) 63)

George Donart and E. B. Smith, for Appellant.

Clarence L. Hillman, for Respondents.

AILSHIE, J.—January 11, 1939, Joseph M. Stover, a Washington county commissioner, aged 70, died at Weiser, as the result of a personal injury by accident. Notice of his death, filed with the Industrial Accident Board, stated that Stover was "on way to meeting of Board of County Commissioners of Washington County, Idaho, and while crossing the railroad track, was struck by a train which he failed to see on account of a heavy fog." The accident happened "approximately 20 minutes of nine" in the morning. Stover sustained a "fractured skull and other broken bones, and small cut on left hand, and internal injuries." He was driving his car across the railroad track, which ran between his house and the highway; he had to cross the track to get to the highway.

Application for hearing was made by deceased's widow, appellant herein, February 20, 1939; answer was filed by defendants (respondents), denying the material allegations of the application and praying that the claim be dismissed. The matter was heard before two members of the Board October 10, 1939. The testimony disclosed that the board of county commissioners, of which Mr. Stover was a member from the first district of Washington county, was in session January 9th and 10th, 1939; that the minutes for the meeting of January 10th contained the following statement: "On motion, the Board takes a recess until January 11, 1939"; that on the latter date, "Upon receiving notice of the Accidental death of Joseph M. Stover, of the First District, the Board takes a recess until January 12, 1939, no business being transacted." The commissioners usually met at "nine A. M."

It was stipulated between counsel that Stover was, "January 11th, 1939, and continuously immediately prior thereto had been for about eight (8) years the duly elected, qualified and acting Commissioner of the First District of Washington County, Idaho: . . . . That no agreement in this matter regarding compensation has been reached; . . . . That over Two hundred ($200.00) dollars was expended as burial expenses of the deceased, . . . .

"That Joseph M. Stover earned and was paid at the rate of Seven hundred ($700.00) dollars per year as Commissioner of the First District, . . . and that his average weekly wage earned for the year immediately preceding January 11, 1939, was Thirteen and 46/100 ($13.46) dollars a week; . . . .

"That the only issue by this proceeding is whether Joseph M. Stover suffered a personal injury *by accident* arising out of and in the course of his employment by Washington County, Idaho, on January 11th, 1939, within the meaning of the Workmen's Compensation Law."

The Board entered its findings of fact, and rulings of law and ordered that the claim for compensation be denied and the application be dismissed, from which claimant has appealed to this court.

Washington county is a county of the third class (chap. 186, p. 309, 1937 Sess. Laws) and is required to pay its commissioners an annual salary of $700.00 "and actual and necessary expenses." The statute defines "actual and necessary expenses" as follows:

"The term 'actual and necessary expenses' shall be deemed to include all traveling expenses and hotel expenses necessarily incurred by any county commissioner when absent from his residence in the performance of the duties of his office." (1937 Sess. Laws, chap. 91, p. 124.)

It appears, from the foregoing definition of "actual and necessary expenses," that the legislature had in mind that a county commissioner *would have to travel, in the discharge of his official duties,* and that he should be paid his necessary traveling expenses in going "from his residence." "Residence" is the house, building or place where one dwells. (See 54 C. J., p. 708, sec. 5.)

Had the legislature understood and intended that *all duties* of a commissioner would be transacted at the county seat; and that a commissioner would not be on duty until he reached the county seat, there would have been no reason whatever for allowing his necessary "traveling expenses. . . . *from his residence.*" Under such a construction of the statute, the only expense that could be allowed a commissioner would be his hotel bills, while in actual session *at the county seat.* Such was clearly not the thought or intent of the legislature in enacting this statute.

Respondents, in support of their contention, that the order of the Board, denying compensation in this case, should be sustained, cite many cases from this court, holding that the employer is not liable for an accident and resultant injury to an employee, in a case where the accident occurred while the employee was traveling to or from his place of work on the public highway, or elsewhere *not on the premises of the employer.* (*Stewart v. St. Joseph Lead Co.* 49 Idaho 171, 286 Pac. 927; *Walker v. Hyde,* 43 Idaho 625, 631, 253 Pac. 1104; *Neale v. Weaver,* 60 Idaho 41, 48, 88 Pac. (2d) 522.) The rule contended for by respondents is well established by the authorities in this state. Those cases, however, apply

to employees working for individuals or private corporations in purely proprietary business. It is believed there is a material difference between that class of employee and his employment on the one hand, and the employment of a county commissioner, whose duty is prescribed by law and who is required to look after and supervise the government and business affairs of the county, in collaboration with his associates on the Board.

To put the matter in another form; the business of a county, as a governmental arm of the state, is not confined exclusively to the courthouse; it is conterminous with the county boundaries. The very nature of the duties of some of the county officials requires that those officers discharge a large part of their business, and acquire a large part of the information upon which they act, at various points throughout the county upon personal inspection. That is true with reference to the sheriff, the assessor, the county surveyor and coroner. It is likewise true with reference to the commissioners. Much of the business they have to transact at their office in the courthouse originates at diverse and sundry places throughout the county and requires the investigation and report of one or more of the commissioners before official action can be taken by the Board as a whole in official session.

Chapter 7, Title 30 of the Annotated Codes, is devoted to enumeration of powers and duties of commissioners and direction as to numerous acts and things to be performed. They must "lay out, maintain, control and manage public roads." (sec. 30-705) ; provide for a farm in connection with the maintenance of a county hospital (sec. 30-706) ; purchase or lease personal property and care for it (sec. 30-707) ; make personal examination of railroad tracks where crossed by wires (sec. 30-751) ; do all things necessary to the purchase of court house sites and erect county buildings (sec. 30-803) ; look after the indigent and dependent poor (sec. 30-2901) ; and many other things which necessitate information from personal inspection or report from some responsible source, before intelligent official action can be taken by the members as a Board of Commissioners.

The cases of *Rankin v. Jauman,* 4 Idaho 394, 39 Pac. 1111, and *Miller v. Smith,* 7 Idaho 204, 61 Pac. 824, relied on by respondents, are not thought to be decisive of this case. There the compensation of commissioners was fixed at a per diem wage; and it was held in the Jauman case that this per diem allowance could only cover the actual number of days the Board was in session. The Miller-Smith case dealt with official misconduct for which the commissioner was removed. It is true that both per diem wages and traveling expenses were involved in the decision of these cases, but neither the circumstances nor the statutes there considered are involved here. The latter case dealt with a serious abuse which had sprung up and required reprimand. We are dealing with an entirely different statute, fixing an annual salary and authorizing the payment of "actual and necessary expenses" to a commissioner *"when absent from his residence in the performance of the duties of his office."* The statute requires the county to be divided into three commission districts, (sec. 30-604, I. C. A.) and one commissioner to be elected from each district, so that it is not practicable for more than one commissioner to be a resident in close proximity to the court house; and yet each is required to attend the meetings of the Board. It was said at the hearing by one witness, that the deceased had phoned that he would go by the dealers on his way to the Board meeting and order a load of coal delivered to an indigent county charge. This is adverted to merely to illustrate one of the varied and sundry duties of a commissioner.

The case of *Commissioners v. Blakley,* 20 Wyo. 259, 123 Pac. 72, Ann. Cas. 1915B 584, is a well considered and exhaustive review of the subject. In that case Justice Potter, speaking for the Wyoming court, considered many cases and statutes and reached this conclusion:

"If there is no duty of the office that a county commissioner could possibly perform except when actually in attendance upon a meeting of the board, and the time of such attendance would be all that could actually be employed in the performance of the duty, then it may be that the per diem allowed by the statute would be

limited to the time of actual attendance at a session of the board. But, *if the time actually and necessarily consumed in going to and returning from a meeting is employed in the discharge of a duty of the office it must follow that the commissioner is entitled to the per diem for the time so employed."* (Italics supplied.)

It is clear that the business of the employer (Washington county) was the cause and active incentive for decedent starting on the trip that morning to the court house; except for the employment, he would not have been on *that* trip. (*Parker v. Twin Falls County,* 62 Idaho 291, 111 Pac. (2d) 865; *In re Christie,* 59 Idaho 58, 81 Pac. (2d) 65.)

■ The administration of the Workmen's Compensation Law (Sec. 43-901 et seq., I. C. A.) and benefits accruing thereunder to workmen and employees has become a fixed principle of public policy of the state. (Sec. 43-902, I. C. A.; *Olson v. Union Pacific R. Co.,* 62 Idaho 423, 112 Pac. (2d) 1005, 1007; *Close v. General Construction Co.,* 61 Idaho 689, 694, 106 Pac. (2d) 1007; *Lebak v. Nelson,* 62 Idaho 96, 107 Pac. (2d) 1054, 1060.) This court is also committed to the rule of liberal construction of the compensation act in favor of employees. (*Olson v. Union Pacific Railroad Co.,* 62 Idaho 423, 112 Pac. (2d) 1005, 1006, and cases there cited.)

■ We conclude that decedent, at the time of the accident and resultant injury, was pursuing the course of his employment.

Judgment of the Board is reversed and the cause is remanded with directions to make findings and enter judgment for the statutory compensation allowable in such case in favor of appellant. Costs to appellant.

Budge, C.J., and Givens and Holden, JJ., and Buckner, District Judge, concur.

Morgan, J., deeming himself disqualified, did not sit at the hearing nor participate in the opinion.