293 P.2d 661

Patricia BEEBE, widow, on behalf of herself and as natural guardian of David Wayne Beebe and Eric Bruce Beebe, minors, Claimant-Respondent,

v.

C. B. HORTON and F. T. Horton, a co-partnership, doing business as Horton Nursing Home System, Employer, and Tri-State Insurance Company, Surety, Defendants-Appellants.

No. 8327.

Supreme Court of Idaho.

Feb. 7, 1956.

William M. Smith, Boise, for appellants.

Glenn A. Coughlan, Boise, for respondent.

ANDERSON, Justice.

Two brothers, C. B. and F. T. Horton, on January 24, 1955, and for some time prior thereto, operated for profit five nursing homes under the name of Horton Nursing Home System, three being located in Iowa, one at Twin Falls, Idaho, and one at Nampa, Idaho. Wayne A. Beebe managed their Twin Falls County home, which was leased from the county and was located about four miles southeasterly of Twin Falls, where 65 to 70 elderly patients were being cared for. Forty of these were receiving public assistance. Beebe's duties as manager of the home consisted of overseeing the entire operation, which included employment and discharge of employees, operation of the dining hall and living quarters, handling of the finances, doing the bookkeeping, attending to the personal affairs of the patients and occasionally doing errands for them in town, obtaining medical care, and making preliminary burial arrangements when a patient died. On county patients he reported to the county commissioners monthly and frequently had conferences and negotiations with the county board. He was subject to call 24 hours a day. He lived with his family in a small house about 100 feet to the rear of the nursing home.

Robert Horton, son of F. T. Horton, was manager of one of the Iowa nursing homes, and also the auditor for all of the five nursing homes. As such, he was in a supervisory capacity over the managers. A few days prior to January 24, 1955, Robert had arrived at the Twin Falls nursing home, and had done some work there. During this time, Beebe and Robert went to the Raeder Flying Service at the Twin Falls airport and talked of renting a plane for an hour to fly locally, but the weather did not permit flying that day, so they did not rent one.

Thereafter Robert went to the Nampa home, and later Beebe went there with one of the co-owners, C. B. Horton. January 24, 1955, Robert and Beebe returned to the Twin Falls home, but the record is silent as to their mode of travel, and whether or not they traveled together. They did, however, arrive in time for lunch, which they ate, and then proceeded to Twin Falls.

Again the record does not disclose if it was by automobile or other conveyance.

Beebe went to one of the banks and got 40 $5 bills to distribute among the county patients as their spending money, as was the custom each month upon the patients' signing over their public assistance checks. He thereafter went to the office of the Twin Falls County commissioners and conferred with them relative to their mutual problems in caring for the aged people at the nursing home.

About four o'clock he left, and with Robert went to the Twin Falls airport, located about four and a half miles south of Twin Falls. While the record shows that the airport was north or northwesterly from Twin Falls, at the time of the oral argument it was established that the airport is actually south of Twin Falls, and that the nursing home is southeasterly about four miles from Twin Falls and a like distance from the airport.

A small tandem airplane was rented for an hour of local flying, and Robert, who was licensed and accustomed to flying light planes, was at the controls of the plane when they left the airport at 4:20 p. m. Beebe, who had never before been in a light plane, was in the other seat when they left the airport. The weather conditions were excellent for flying.

Henry Dohse, who was feeding sheep near the canyon rim, observed the airplane directly east of him, and it was flying north at a normal height and speed, toward the Horton Nursing Home. When he next noticed the plane, it was flying south, and then it went into a spiral and crashed about one-half mile from the witness. The place where the plane fell was about 100 to 150 feet from the line fence of the nursing home, or about 500 yards in back of the home, in either a plowed field or a very rough field in which beans had been raised that year, and which was exceedingly muddy.

The evidence fails to disclose the purpose of the airplane flight, other than for an hour of local flying. There is no evidence that a landing could be made at or near the home, and although they were near it at the time of the accident, in which they were both killed, it is not contended that they flew directly there. The crash occurred about 30 minutes after the take-off.

After a hearing, the Industrial Accident Board awarded workmen's compensation.

The sole issue is whether or not the accidental death of Wayne A. Beebe arose out of and in the course of his employment by the Horton Nursing Home System.

This court has repeatedly recognized that in determining whether an accident arises out of and in the course of employment, each case must be decided upon its own attendant facts and circumstances under a liberal construction of the Workmen's Compensation Act, I.C. § 72–101 et seq., to effectuate its intent and purpose. Colson v. Steele, 73 Idaho 348, 252 P.2d 1049.

Applying the liberal construction rule, compensation should be allowed if the injury or death can reasonably be construed to have arisen out of and in the course of the employment. In determining whether or not the risk or hazard causing the accident is one of the risks of the type of work in which the employee was engaged, the nature of the business and the duties of the employee must be considered, together with the activities of the employee at the time of the accident.

Respondent urges that as it was proven that Beebe was a 24-hour employee and that his duties took him many places outside the nuring home premises in order to properly manage and operate it, the fact that he was injured off the premises would not necessarily place the accident outside of his employment. We think it may or may not, depending on the particular facts of each case.

In the case of Walker v. Hyde, 43 Idaho 625, 253 P. 1104, an employee was injured when getting on a truck, not furnished by the employer, to return from lunch. It was held that the particular danger did not follow as a natural incident of the work.

This court, in the case of Potter v. Realty Trust Co., 60 Idaho 281, 288, 90 P.2d 699, 702, quoted from a Pennsylvania case, Shoffler v. Lehigh Valley Coal Co., 290 Pa. 480, 139 A. 193, with approval the following:

" 'The fact of employment is not the sole basis for compensation. It requires also that the injury shall have occurred in the course of employment.

The expression "in the course of employment," as used in the law of master and servant, means while injured in the service of the master, and is not synonymous with "during the period covered by his actual employment." ' "

In the case of Parker v. Twin Falls County, 62 Idaho 291, 111 P.2d 865, a sheriff went from Twin Falls, Idaho, to the State of Nevada, and then made a side trip visiting relatives in Utah. He was accidentally killed while on the side trip, and while carrying his gun and wearing his badge. The court stated, 62 Idaho at pages 296–297, 111 P.2d at page 867:

"* * * The record does not disclose that the service of the master was a concurrent cause of the out of the way side trip which the servant was taking at the time of the accident."

The court held that the widow could not recover compensation, as the sheriff's death was not caused by an accident arising out of and in the course of his employment.

In the present case, the accident occurred off the employer's premises in an airplane and field, in neither of which places does it appear from the record that Beebe could reasonably have been in the performance of his duties.

Insofar as shown by the record, Beebe's work did not create the necessity for an hour's airplane flight, nor was it reasonably connected with his occupation as manager of the nursing home, nor was it reasonably incidental thereto; but there is

no evidence that it was other than a personal trip outside of the course of his employment. Parker v. Twin Falls County, 62 Idaho 291, 111 P.2d 865; Eriksen v. Nez Perce County, 72 Idaho 1, 235 P.2d 736; Loyola University v. Industrial Commission, 408 Ill. 139, 96 N.E.2d 509; Larson, Workmen's Compensation Law, sec. 24.22, p. 376.

The award of the Board is reversed.

TAYLOR, C. J., KEETON and PORTER, JJ., and BECKWITH, D. J., concur.