MORRIS MARONOFSKY'S (dependents') CASE.

Suffolk. December 5, 1919. — January 6, 1920.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Workmen's Compensation Act,* Injuries to which act applies.

One, employed by a manufacturer as a foreman in one of two buildings of his employer, in going to another building to answer a telephone call, passed through the basements of both buildings. Upon his return by the same route, he stopped to talk with a fellow employee and, as a result of their conversation and merely through curiosity, he looked into a vat with which his employment had nothing to do, and, in leaning against a galvanized iron table and reaching for a portable electric lamp, he received an electric shock which caused his death. In proceedings under the workmen's compensation act by his dependent, it was *held*, that the claim must be dismissed, because the injury did not arise out of or in the course of the employee's employment.

APPEAL under the workmen's compensation act from a decision of the Industrial Accident Board dismissing a claim of the alleged dependents of Morris Maronofsky, who was killed on September 19, 1918, as described in the opinion, while employed by the Gillette Safety Razor Company as a foreman of the men who worked on blade presses.

In the Superior Court the appeal was heard by *Wait*, J. Material facts found by the Industrial Accident Board are described in the opinion. A decree was entered dismissing the claim; and the claimants appealed.

*F. S. Wyner*, for the claimants.

*L. C. Doyle*, for the insurer.

CROSBY, J. This is a proceeding under the workmen's compensation act by the alleged dependents of the employee to recover compensation for his death. The single member of the Industrial Accident Board made, among other findings, the following: "On the night of the accident the deceased was called to answer a telephone call, as to the nature of which there is no evidence and, in order to reach the telephone which was located on the first floor of Building A, he had to go from the basement of Building B, where he was employed, through the basement of Building A and up to the first floor. After he ended his telephone conversation he started back on his way to the basement of Building B, his place of employment, but on the way stopped to talk with a fellow workman who was standing at a tank in the basement of Building A and inquired about the contents of the tank. He was told that the tank had 'a little water in there and a few blades.' At the time, the deceased happened to be leaning on a galvanized iron table and in reaching for the portable electric lamp that was hanging from the ceiling he received a shock which caused his death. It appears, from the evidence, that the tank had nothing to do with the employment of the deceased and that he looked into it through curiosity, an act which could not be reasonably said to be incidental to his employment. . . . Therefore, I find that the employee did not receive an injury which arose out of and in the course of his employment and the claim of the dependents is dismissed."

Later, the case was referred back to the single member to hear further evidence, some of which tended to show that the de-

ceased went to the tank for the purpose of having a pair of over-
alls washed in accordance with an alleged custom among the
employees. The single member thereafter found in part as fol-
lows: "I am satisfied, after hearing this new evidence, that the
deceased employee did not meet his death while in the act of pre-
paring to wash his overalls, and the new evidence submitted in
no way changes my previous finding."

The Industrial Accident Board on review affirmed the findings
and decision of the single member and dismissed the claim. The
finding that the fatal injuries received by the employee did not
arise out of and in the course of his employment must stand as
there was evidence to support it. If, as the board found, the
deceased while on his way back to the room where he was em-
ployed stopped at the tank to talk with a fellow·workman on
matters not connected with his employment, and while so engaged
leaned on a galvanized iron table and took hold of an electric
lamp to enable him to look into the tank, merely for the purpose
of satisfying his curiosity, it is plain it properly could not be found
that the accident arose out of or in the course of his employment.
*Haggard's Case, ante,* 330. *Savage's Case,* 222 Mass. 205. *O'Toole's
Case,* 229 Mass. 165. *Warren* v. *Hedley's Colliery Co. Ltd.* 6 B. W.
C. C. 136. *Horsfall* v. *Owners of Steamship Jura,* 6 B. W. C. C.
213.

*Decree affirmed.*