ROBERT J. SIMON, APPELLEE, v. STANDARD OIL COMPANY, APPELLANT.

36 N. W. 2d 102

Filed February 25, 1949.   No. 32517.

*Fitzgerald & Smith* and *Robert L. Smith,* for appellant.

*Kennedy, Holland, DeLacy & Svoboda, Edwin Cassem,* and *Harry R. Henatsch,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

This is an action by Robert J. Simon, appellee, against Standard Oil Company, appellant, for disability benefits under the provisions of the Workmen's Compensation Act of Nebraska.

Appellee alleged that by an accident on the 8th day of August, 1947, he suffered personal injuries arising out of and in the course of employment consisting of fractures and lacerations of the thumb and the first finger, and a severed tendon of his right hand, by coming in contact with an electric fan while being operated in the repair shop of the appellant in Council Bluffs, Iowa. The appellant denied that the alleged injuries arose out of and in the course of the employment of the appellee by the appellant, and alleged that any injuries inflicted upon the appellee were the direct and proximate result of his willful negligence in that he deliberately walked more than 30 feet from the place where his duties required him to be and placed his hand in such close proximity to the fan as to be injured; that the fan was in a well-lighted room and was readily discernible for a distance of more than 30 feet; and that it was no part of the duties of appellee to operate, maintain, or care for the fan or to be in close proximity thereto.

The issues are whether appellee was the subject of an accident arising out of and in the course of his employment, or whether the accident was caused by his willful negligence.

The case was by stipulation of the parties, heard before a member of the compensation court in Douglas County, Nebraska, and an award was made for the appellee. A rehearing was had by that court on request of the appellant and the original award was affirmed. Appellant appealed to the district court of Douglas County where the findings and award of the compensa-

tion court were sustained. This appeal is from that judgment.

The evidence contains no dispute as to any material fact. Appellee, a young man of 24 years, was employed and worked for appellant. Commencing in June, 1947, he was assigned to the Omaha shop and worked as one of the shop personnel until it was moved to Council Bluffs, Iowa, about the first of August, 1947. Appellee was employed as a tank calibrator, but was instructed, as all the shop personnel were, to sweep and clean up the shop and leave it clean at night. The sweeping and cleaning was generally done by Mr. Bailey, assisted by appellee. His duties as a calibrator were to check and measure the capacity of storage tanks mounted on trucks. This was done by filling state-inspected measuring buckets with water and pouring the water therefrom into the tank, marking each time the actual amount of liquid in the tank with a measuring stick until the full capacity was reached and then setting the gauge. Cleaning the repair shop consisted of sweeping and then washing the floor with a water hose.

Appellee took a tank truck from Omaha to Council Bluffs about noon on the 8th day of August, 1947, and engaged in the work of calibrating it that afternoon in the wash room of the repair shop until about 3:30 p. m., when he found that he could not finish it because of an error made in calibrating and the lack of some required material.

The repair shop of appellant at Council Bluffs consisted of two rooms—a wash room for washing trucks and equipment, and a paint room. The front of the building was to the west. There was a solid wall between the two rooms and a doorway on the west between the rooms fitted with a door. The wash room was on the south, and the paint room on the north. The paint room was 33 feet east and west and 27 feet north and south, and it was 30 feet from the door or entrance to the paint room in a straight line to the location of the

fan at the northeast corner of the room. A new 24-inch exhaust fan was installed in the east wall near the northeast corner of the paint room of the repair shop a day or two before the accident by the Flynn Electric Company of Council Bluffs.

When the appellee discontinued his work on the truck about 3:30 p. m. the day of the accident, he assisted for about five minutes in sweeping or cleaning the floors of the shop, but does not remember definitely where he worked, but it did seem to him that he was sweeping last in the area to the right or south of the wash rack in the wash room and that he helped "squirt the hose around all over the shop." Appellee got off the truck and helped Mr. Bailey who was sweeping the floor and was "in the process of running a hose over it." Mr. Bailey "was running the hose over it" and appellee "helped him sweep down some of the dirt into the drain." The drain was in the wash room. The fan was not operating or running while the work of cleaning was being done. Mr. Bailey turned on the fan after the work was finished. Appellee had no duty or obligation in reference to the operation, care, or maintenance of the fan. When the cleaning was finished and after Mr. Bailey had put the fan in operation, appellee went to the fan, put up his hand to it, and got it too close. "Q- What did you do that for? A- I did it just to see how much air it was pulling through it. I thought I could feel it without getting my hand in it. I didn't put my hand in it. I just wanted to see how much air it was pulling and as I got my hand up there my hand was flipped and it happened before I knew it. * * * Q- The fan was a new thing? A- Yes."

Appellee knew the action of the fan pulled air into it and created a suction or force toward the fan. He had been working in the area of the truck, had finished his work and went to the fan in the adjacent room "just to see how much air it was pulling through it."

An important inquiry is whether the accident causing

injury to appellee arose out of his employment. An injury to be the basis of a cause of action within the provisions of the Workmen's Compensation Act must be one caused by an accident arising out of and in the course of the employment. In many instances an injury which occurs in the course of the employment is also one which arises out of it. This is not always true. The compensation law does not make the employer an insurer against all injuries suffered by his employees in the course of their employment, but it does limit recovery of disability benefits to injuries received both in the course of and out of the employment. The phrases "in the course of" and "arising out of" are not synonymous, and where they are used conjunctively, as they are in the compensation law of this state, a double condition is imposed and both must exist to bring a case within the act. § 48-109, R. S. 1943; Weitz v. Johnson, 143 Neb. 452, 9 N. W. 2d 788; Gale v. Krug Park Amusement Co., 114 Neb. 432, 208 N. W. 739, 46 A. L. R. 1213; 58 Am. Jur., Workmen's Compensation, § 210, p. 717. The right of recovery is statutory, and unless the case has been brought within the conditions imposed by the statute, it must fail. Whether an accident arises out of and in the course of employment must be determined by the facts of each case. There is no fixed formula by which the question may be resolved. Hopper v. Koenigstein, 135 Neb. 837, 284 N. W. 346; Conzuello v. Teague, 123 Neb. 574, 243 N. W. 779; 58 Am. Jur., *supra.*

An injury to entitle an employee to disability benefits because of the Workmen's Compensation Act must have had its origin in or have been incidental to the employment, or it must have resulted from a risk, which by reason of the employment exposed the employee to a greater hazard than if he had not been so employed. The fact that the employee was at the place of the injury because of his employment is not sufficient to sustain a recovery, if the injury resulted from a cause having

no relation to the nature of the employment. In Hopper v. Koenigstein, *supra,* the rule is stated in this language: "The term 'arising out of the employment' in the workmen's compensation law covers all risks of accident from causative acts done or occurring within the scope or sphere of the employment. All acts reasonably necessary or incident to the performance of the work, including such matters of personal convenience and comfort, not in conflict with specific instructions, as an employee may normally be expected to indulge in, under the conditions of his work, are regarded as being within the scope or sphere of the employment.

"In determining whether a risk arises out of the employment, the test to be applied to any act or conduct of an employee which does not constitute a direct performance of his work is whether it is reasonably incident thereto, or whether it is so substantial a deviation as to constitute a break in the employment and to create a formidable independent hazard." See, also, Bergantzel v. Union Transfer Co., 124 Neb. 200, 245 N. W. 593; and Henry v. Village of Coleridge, 147 Neb. 686, 24 N. W. 2d 922.

Appellee had no duty or obligation concerning the operation, inspection, care, or maintenance of the fan. It was not operating until after the duties of the day of the accident were completed. The fan was a fixture and was not a machine for the conduct of the business of the appellant. It was properly installed and presented no dangers not incident to any such device. Appellee under the evidence in this case had no more occasion to go to the fan and test its operation than he would have had to go to the place of a circular saw or any dangerous machine that might be properly installed for the conduct of the business, for the purpose of testing whether the saw or machine was in motion. He had completed all his work of that day before the fan was put in motion. He was to the right and south of the wash room when he finished his duties for that day.

That place was much more than 30 feet from and in a different room than the one in which the fan was located. Contrary to being engaged in the pursuit of any duty of his employment or anything even remotely incident thereto, the appellee, not passively, but voluntarily and intentionally, went to and attempted to test a fixture with which he had no concern, duty, or responsibility. He placed his hand in close proximity to the fan for the sole purpose of satisfying his curiosity as to the suction power of the fan—"to see how much air it was pulling through it." It is certain that the accident had no connection with his employment or any matter reasonably necessary or incident to the work of his employment.

It is suggested that the appellee had a right to go into and be in the paint room where the fan was installed and in which a part of his work was on occasions performed. This can have no probative force in this case as he did not go into and was not in this room at the time of the accident for any purpose connected with or incident to his work. The performance of no work or any incident of employment led him to the fan. He was impelled by his personal curiosity. There is no legal principle within which it can be said that the accident arose out of the employment. Where an employee chooses to go to a dangerous place where his employment does not necessarily carry him and incurs danger of his own choosing altogether outside any reasonable requirement of his position, the risk arising from such action is not an incident to and does not arise out of the employment. Bergantzel v. Union Transfer Co., *supra;* Feda v. Cudahy Packing Co., 102 Neb. 110, 166 N. W. 190; Sheets v. Glenwood Telephone Co., 135 Neb. 56, 280 N. W. 238; White Star Coach Lines v. Industrial Commission, 336 Ill. 117, 168 N. E. 113; Saucier's Case, 122 Me. 325, 119 A. 860; Willette's Case, 135 Me. 254, 194 A. 540; Maronofsky's Case, 234 Mass. 343, 125 N. E. 565.

An injury received by an employee, proximately resulting from acts done by him for the purpose of gratifying his curiosity, and having no connection with the duties of his employment is not compensable as arising out of and in the course of his employment. 58 Am. Jur., Workmen's Compensation, § 238, p. 743; Maronofsky's Case, *supra;* Saucier's Case, *supra.*

An injury occurs in the course of the employment, within the meaning of the Workmen's Compensation Act, when it takes place within the period of the employment, at a place where the employee has a right to be, and while he is engaged in performing the duties of the employment or something reasonably incidental thereto. An employee is not in the course of his employment, even though he may be in the general sphere of it, if he is not engaged in performing some duty for which he was employed or something reasonably incidental thereto. The fact that the injured employee was at the place of the injury because of his employment is not sufficient to sustain a recovery if the injury sustained resulted from a cause having no relation to the nature of the employment. An injury is not compensable where an employee on his own initiative leaves the line of duty under his employment for a purpose of his own and pursues it to his injury. The liability under the Workmen's Compensation Act is based not upon any act or omission of the employer, but upon the existence of the relationship which the employee bears to the employment, because of and in the course of which he is injured, and the clause "personal injuries arising out of and in the course of employment" is declared by the Legislature "not to cover workmen who, on their own initiative, leave their line of duty * * * for purposes of their own." § 48-109, R. S. 1943; § 48-151 (6), R. S. Supp., 1947; Burlage v. Lefebure Corp., 137 Neb. 671, 291 N. W. 100; Bergantzel v. Union Transfer Co., *supra;* Henry v. Village of Coleridge, *supra;* 58 Am. Jur., Workmen's Compensation, § 212, p. 720.

The work of the day of the accident had been com-

pleted. Appellee was in a place of safety a considerable distance from the fan. He, on his own initiative, went to the fan for a purpose of his own "to see how much air it was pulling through" and he pursued this purpose to his injury. If the appellee had stayed in or departed the premises from the wash room, where he was at the time the work was completed, or if he had not yielded to his curiosity as to the operation of the fan, he would have received no injury. The accident resulting in injury to the appellee was not in the course of his employment.

A liberal construction of the Workmen's Compensation Act is urged in support of the claim of appellee. A liberal construction of this statute is a tradition in this jurisdiction, but it cannot be liberalized by judicial interpretation to allow noncompensable claims. Its provisions cannot be legally extended to make the employer an insurer of his employee against all misfortunes however received if they happen on the premises of the employer. This is neither the language nor the intent of the statute.

The evidence does not establish the defense of willful negligence. Clark v. Village of Hemingford, 147 Neb. 1044, 26 N. W. 2d 15. A careful review of this case compels the conclusion that the judgment should be reversed and the action dismissed.

REVERSED AND DISMISSED.

CARTER, J., dissenting.

I am not in accord with the majority opinion. The difference in views goes to the scope of the Workmen's Compensation Act and not to the facts as recited by the writer of that opinion.

The claimant was injured on the premises of the employer during his assigned working hours. He violated no instructions of the employer in entering the room where the exhaust fan was located; in fact, the evidence is that he, on occasion, had duties to perform in this room. The majority opinion states that the accident was not the result of willful negligence on the part of the claimant and with this I agree. The differ-

ence in views rests on the meaning to be given the words "arising out of and in the course of the employment" contained in the act. It can be generally stated that the words "out of" point to the origin of the cause of the accident, and the words "in the course of" point to the time, place, and circumstances under which the accident occurred. Under the Nebraska act a compensable accident must arise out of and in the course of the employment.

The application of the act is comparatively simple when the accident occurs on the premises of the employer while he is engaged in the performance of his assigned work during the hours of his employment. It is only when, as in the instant case, there has been some deviation from the ordinary that interpretation of the act is required.

We have consistently held that the liberality of construction required by the act does not apply to the proof of claim. An award of compensation must be supported by competent evidence which preponderates in favor of the claimant. But in determining the scope of the act it was clearly the intention of the Legislature that liberality of construction was to be employed in its administration. The purpose of the Workmen's Compensation Act was not to limit and reduce the amounts to be paid employees for already existing liabilities; its purpose was to increase the scope of liability to include accidents connected with the employment for which no liability had previously existed. It was intended that industry should bear the burden of the loss of earning capacity suffered by employees resulting from the ordinary and usual hazards of the industry. It need not arise out of the nature of the employment alone. An injury arises out of the employment if it arises out of the nature, conditions, obligations, or incidents of the employment. This court has recognized this in many cases where the deviation was harmless or the result of the usual and ordinary conduct of employees which an employer ought to anticipate. Accidents which are said to be incidental to the employment

have repeatedly been held compensable, and properly so. In defining the scope of acts requiring that the accident "arise out of and in the course of" the employment, courts generally have held that acts of personal ministration are incidents of the employment. So, too, resting, getting fresh air, smoking, eating, quenching thirst, using the telephone or a toilet, or using an elevator or stairway, are incidental to the employment and injuries sustained are compensable when incurred in the doing of such acts. The rule of liberal construction has been employed in holding that injuries caused by overheating, freezing, snowblindness, assaults, bites by dogs and insects, lightning, objects falling from adjacent premises, larking and horseplay by other employees, are compensable. The foregoing evidences, I think, what the Legislature had in mind in requiring that a liberal construction be given the act.

The claimant in the present case placed his hand in front of an exhaust fan "to see how much air it was pulling through." He certainly did not do it with any intention of injuring his hand. He did it to satisfy his curiosity as to its effectiveness as a suction fan. It was done as any employee might have done under similar circumstances. The actions of employees in touching radiators to see if they are hot or cold, or to hold a hand in front of an air vent to determine if it emits cold or hot air, and similar incidents, including the one before us, are common habits of employees and are risks contemplated within the coverage of the compensation law. In Hopper v. Koenigstein, 135 Neb. 837, 284 N. W. 346, we said: "The term 'arising out of the employment' in the workmen's compensation law covers all risks of accident from causative acts done or occurring within the scope or sphere of the employment. All acts reasonably necessary or incident to the performance of the work, including such matters of personal convenience and comfort, not in conflict with specific instructions, as an employee may normally be expected to indulge in, under the conditions

of his work, are regarded as being within the scope or sphere of the employment. * * * The test to be applied in such a situation to any act or conduct of an employee which does not constitute a direct performance of his work is whether it is reasonably incidental thereto, or whether it is so substantial a deviation as to constitute a break in the employment and to create a formidable independent hazard." Can one say that this claimant in walking into the adjoining paint room and testing the exhaust fan, as anyone might do, severed the employment relationship? He was doing one of the things that men ordinarily do and incurred a wholly unexpected result.

In Moise v. Fruit Dispatch Co., 135 Neb. 684, 283 N. W. 495, the court held that claimant's husband suffered a compensable accident when he struck a match to light his pipe in a gas-filled room and was killed by the explosion. The deceased was an expert in the use of the gas and was fully aware of the danger. Even though he had been warned not to light a match, he thoughtlessly did so. The opinion states: "At the time of the accident Moise as resident manager was in his employer's trade territory, where his duties at the time called him. He was at the identical place where service was required. He had not completed the work in hand and was on his way to the office of defendant's customer to perform further duties for his employer. By lighting a pipe for his own pleasure or comfort he did not necessarily abandon for the moment his relation to his employer."

In the case before us, the claimant did not embark on a mission of his own. The relation of employer and employee still existed. The act of placing his hand before the fan, ordinarily a harmless test, was incidental to his employment. It was an act which the employer might well anticipate in which employees might engage. It falls within that class of cases which hold that accidents resulting from acts incidental to the employment are compensable.

The opinion of the majority tends, in my judgment, to

restrict unduly the purposes of the compensation act. The deviation was not of such a character as to terminate the relation of employer and employee. What the claimant did was incidental to his employment. In my opinion, the compensation court and the district court were correct in allowing compensation benefits. The award ought to be affirmed here.